385 A.2d 474

**ESTATE of Gabriel C. GASBARINI, a/k/a Gabriel C. Gasbarine, Appellee,**

v.

**MEDICAL CENTER OF BEAVER COUNTY, INC., ROCHESTER DIV., and Leon D. Goggin and N. A. Hetzler, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1976.

Decided April 13, 1978.

Bruce E. Woodske, and Oran W. Panner, Beaver, for appellants.

Albert S. Fein, Philadelphia, with him Harry E. Knafelc, Ambridge, for appellee.

Before JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from an order opening an order by which the action had been finally dismissed, and permitting the complaint to be reinstated.

On June 26, 1973, appellee's husband, Gabriel C. Gasbarini, died after an operation performed at appellant Medical Center while under the care of the individual appellants. Desiring to investigate the cause of the death, and if feasible to institute a medical malpractice action, appellee and her son sought to retain a lawyer. After four lawyers had declined the case, appellee heard that a lawyer from Philadelphia, Franklin D. Rubin, happened to be in Beaver County. She spoke to him, and he accepted the case.

On September 26, 1973, Rubin filed a summons in trespass. Appellant Medical Center filed a rule to file a complaint, and senc the rule by certified mail, return receipt requested, to Rubin's address, as listed on the summons. The rule was returned "unclaimed." On January 14, 1974, appellant's lawyer wrote appellee informing her that she risked a non pros, that she should immediately ask her lawyer to prepare a complaint, and that if she had no lawyer, she should advise appellant. Another rule to file complaint was sent to Rubin, this time by ordinary mail; there was no response. On September 20, 1974, judgment of non pros was entered.

Meanwhile, in June of 1974, a second summons was filed, and on October 15, 1974, after a rule to file complaint issued (it is not clear if or how this rule reached Rubin), a complaint was filed. In November of 1974, all appellants filed preliminary objections alleging that the complaint, which had been brought in the name of the decedent's estate, was improper both because an estate cannot be a proper party plaintiff, and because, contrary to the allegation in the complaint, appellee as decedent's wife had not been appointed administratrix of the estate (although proceedings to appoint her had begun). Because of these defects, appellants argued, the statute of limitations had run on the action. Certified notices of the argument were sent to Rubin's address but were returned unclaimed.

On November 27, 1974, Rubin was suspended from legal practice by the Supreme Court. In a later deposition, appellee testified that she and her son had for some time been suspicious that Rubin was not doing a good job, and that they had telephoned him often, each time receiving reassurances. Appellee also testified that she learned of Rubin's suspension not long after it was imposed. Deposition, at 11.

On January 13, 1975, appellants' preliminary objections were argued before the lower court. No lawyer for appellee appeared. On January 31, 1975, the court sustained the preliminary objections and dismissed the complaint without leave to amend. The court had learned at oral argument that Rubin had been suspended, and therefore sent a copy of

its order to appellee as well as to Rubin.[1]  No appeal was taken, and the appeal period subsequently expired.

Early in February, 1975, after receiving the copy of the order dismissing the complaint, appellee called Rubin, who replied that "it wasn't necessary for him to be there . . he would fix another date." Deposition, at 6.  Thereafter appellee and her son continued, unsuccessfully, to try to keep in contact with Rubin;  they wrote a number of letters aimed at determining Rubin's status and whether he was adequately representing them;  and they tried to get another lawyer.  Lower court opinion at 5–6.

Finally appellee did get another lawyer.  (Meanwhile, on May 19, 1975, Rubin had been disbarred.)  Acting on the advice of her new lawyer, appellee obtained her formal appointment as administratrix, and on September 5, 1975, she filed a petition asking the lower court to allow her to reinstate her complaint and to amend its caption.  On January 29, 1976, the lower court opened its January 31, 1975, order of dismissal and granted leave to reinstate and amend the complaint,[2] which appellee did.  This appeal followed.

■  The problem presented by these events, it will be observed, arises from the fact that appellee took no appeal from the lower court's order of January 31, 1975, sustaining appellants' preliminary objections and dismissing her complaint without leave to amend.  Ordinarily, the failure to appeal within the statutory period renders the doctrine of res judicata applicable and precludes the vacation of the order after the time of appeal has passed.  *Love v. Temple University*, 422 Pa. 30, 220 A.2d 838 (1966).  This court in

1.  The lower court "considered scheduling another argument, notifying Mrs. Gasbarine and giving her an opportunity to retain another lawyer.  However, we opted for entering the dispositional Opinion and Order and sending a copy direct to Mrs. Gasbarine, as well as to counsel of record.  We did so because it appeared to us that the law was so clear with respect to an estate being a party, that no lawyer could successfully contest said preliminary objection." Lower court opinion at 4.

2.  The September 20, 1974, judgment of non pros as to the first summons was not involved in these proceedings.

*Klugman v. Gimbel Bros., Inc.*, 198 Pa.Super. 268, 182 A.2d 223 (1962), elaborated upon the rule:

> Unlike a judgment entered by confession or upon default, which remains within the control of the court indefinitely and may be opened or vacated at any time upon proper cause shown, a judgment entered in an adverse proceeding ordinarily cannot be disturbed after the expiration of the term at which it is entered. See *Dormont Motors, Inc. v. Hoerr*, 132 Pa.Super. 567, 1 A.2d 493 (1938). This doctrine, respecting judgments entered after hearing, has a very definite function, namely, to establish a point at which litigants, counsel and courts ordinarily may regard contested lawsuits as being at an end. See *Kappel v. Meth*, 125 Pa.Super. 443, 189 A. 795 (1937). The rule that adverse judgments may not be opened after the expiration of the term is not absolute, but the discretionary power of the court over such judgments is quite limited. *Dormont Motors, Inc. v. Doerr*, supra. Generally, the rule has been relaxed only where fraud appeared or the circumstances were so grave or compelling as to constitute "extraordinary cause" justifying intervention by the court. Ibid.

198 Pa.Super. at 272, 182 A.2d at 225.

*Klugman* is particularly illustrative because it concerned an effort by a defendant to join in an appeal by an additional defendant, although the defendant (the would-be appellant) had let his own appeal period expire. Holding that it was error for the lower court to have allowed the defendant to join in the appeal, this court said:

> Since no fraud was shown and *an error or oversight by counsel in failing to appeal does not constitute "extra-ordinary cause"*, the action of the lower court cannot be sustained as a proper exercise of the limited discretion vested in it over adverse judgments entered at a previous term.

198 Pa.Super. at 273, 182 A.2d at 225 (emphasis supplied).

Similarly, in *Wise v. Cambridge Springs Borough*, 262 Pa. 139, 104 A. 863 (1918), a defendant appealed from a judgment of the Workman's Compensation Board after the stat-

utory 10-day period allowed for appeals had expired. The Supreme Court disallowed an appeal nunc pro tunc:

> Where a party has been prevented from appealing by fraud, or by the wrongful or negligent act of a court official, it has been held that the court has power to extend the time for taking an appeal. [Citations] But where no fraud or anything equivalent thereto is shown such appeals cannot be allowed. [Citations] *The mistake or neglect of the attorney for the party desiring to appeal is not sufficient ground for relief: Ward v. Letzkus,* 152 Pa. 318, 319, 25 A. 778.

262 Pa. at 144, 104 A. at 864 (emphasis supplied).

■ The Restatement of Judgments similarly makes clear that the actions of appellee's lawyer, Rubin, do not compel granting appellee relief. The Restatement would grant relief when the judgment in question involves fault of the court, *see* § 120(b);[3] or fault by the opposing party, *see* § 120(a) and (c) and § 122;[4] or, sometimes, circumstances beyond the complaining party's control, see § 125 and comment (b).[5] It specifically says, however, in § 126:

**3.** Section 120 reads:
Subject to general equitable considerations (see §§ 127–130), equitable relief from a valid judgment will be granted to a party to the action injured thereby if, without fault, he did not know of the action or did not appear at the trial, and this was due to
(a) misrepresentation, duress or breach of promise by the other party to the action, or
(b) error of the court or of its officers, or
(c) the misfortune of the present complainant in a case where the other party to the judgment knowingly made a false claim or defense or was guilty of sharp practice.

**4.** *See* footnote 3, *supra*; § 122 provides relief "if in the action [a party] was prevented from having a fair trial because of the bribery of or duress upon his attorney, agent or other person in charge of the action or defense, by the other party to the action."

**5.** Section 125 would give relief "if circumstances arise after the judgment is rendered which make it inequitable to enforce the judgment . . . ." Comment (b) to that section says:
So too a person who has been prevented from taking appellate proceedings because of circumstances over which he had no control may be entitled to equitable relief, as where the court records are tampered with or lost and no other relief against the judgment is available.

(2) Although a judgment is erroneous and inequitable, equitable relief will not be granted to a party thereto on the sole ground that

\* \* \* \* \* \*

(f) the negligence of the attorney, agent, trustee or other representative of the present complainant prevented a fair trial.

Rubin's actions appear to have been grossly rather than only ordinarily negligent, but this is not a sufficient reason for us to refuse to apply the law; indeed, the contrary is so. If a single incident of mistake or neglect by a lawyer is not ground for relief, neither can repeated incidents be, especially when, as here, they were evident to the lawyer's client.

*Great American Credit Corp. v. Thomas M. Mini-Markets, Inc.*, 230 Pa.Super. 210, 326 A.2d 517 (1974), cited by appellee, involved *a mistake of the court* in misplacing a party's letter requesting an extension. In *Fredley v. Crandall Filling Machinery, Inc.*, 234 Pa.Super. 530, 342 A.2d 757 (1975), also cited by appellee, the "extraordinary circumstance" involved was *a change of law*, and therefore neither is it helpful.

We realize that our result is a harsh one for appellee. Her difficulty in retaining a lawyer is regrettable and raises a disturbing doubt about the adequate delivery of legal services in this state, although we should add that on appellee's testimony alone we cannot say that she tried every possible means to obtain a competent lawyer. The policy of finality in litigation, however, serves an important function both for the courts and the parties involved. The policy would be seriously undercut if the mistakes—great or small—of a lawyer were to become grounds for opening a court's long-entered order. Evidence in the case might be lost. A self-serving assertion that a lawyer had made a mistake might be difficult, or impossible, for an opposing party—not at fault in any way—to rebut. Appellee's remedy must therefore be against Rubin, not appellants, who were not at fault in any way, and who in fact made an early effort to

alert her to the questionable performance of her lawyer by telling her that she risked a non pros.

The order of the lower court is reversed, and the order of January 31, 1975, dismissing the complaint, is reinstated.

HOFFMAN, J., dissents.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.